The next case is number 2012-14-06. Mr. Mikitianskiy against Thermionics. Mr. Mikitianskiy, whenever you are ready. Good morning, your honors. May it please the court. My name is Leonid Mikitianskiy and I'm the appellant. This appeal is a simple contract case. The contract that was formed under Illinois state law. The contract was a settlement agreement between Thermionics, the appellee, and myself. We can't review whether or not we think in the first instance we would have found a contract. We are looking at it through a lens of whether or not the trial court abused its discretion in finding that there was no meeting of the minds. Isn't that right? Yes, judge. And I'm here to argue that the district court did abuse its discretion because the district court's conclusion that there was no settlement agreement was unreasonable. The settlement agreement was reached during the initial stages of discovery, more precisely exactly one week before the scheduled entry and inspection date when Thermionics' documents were supposed to be collected, including electronically stored information. On June 23rd of 2011, Thermionics sent me its best and final offer, which included only two material terms, the settlement of the false bad marking action for a payment of $50,000. I accepted the settlement the very next day and that's what brings us here today. What about this insurance lawsuit did you think needed to be released as it relates to you? Well, judge, at the time I believed that I was entitled to a release clause, but the release clause wasn't material in any case and Thermionics blew out an elephant issue out of a fly-sized issue by allotting one to the release. Well, how can you argue that the release isn't a material term where you stated explicitly settlement of the false marking case is contingent on full mutual releases? Well, judge, contingent, among other things, means reliant and dependent. I didn't say that I was not going to perform the settlement agreement if the release clause was not included in the written agreement. I merely said that I believed it should have been there. You said settlement is contingent. Doesn't that suggest that in the absence of doing this there's not going to be a settlement? Isn't that a fair reading? Even if the word contingent introduced any ambiguity into the issue of whether or not I was going to perform the settlement contract, it was merely an ambiguity. Let's go beyond that. The judge is quoting from JA-72. Not only did you say it was contingent, but then you said that without it the settlement of the false patent marking action is meaningless. That's not very ambiguous. Well, judge, at that point, mere posturing, if I may say so. Tempers do flare, strong arguments are made, but that was post-settlement agreement because the settlement was reached on June 24th when I accepted Thermionics as settlement law firm. These things happen all the time while the written agreement is memorialized, but no one ever walks away from these things except Thermionics because it had an opportunity to walk away under the new law, and it did not. Do you think they could have enforced the settlement against you? Yes, judge, they could have. In light of those statements? Yes, judge, they could have, and not only that, Thermionics didn't even bother figuring out whether or not I wanted to proceed with the settlement. Thermionics did not seek reassurances. It did not send me a letter. It did not send me a fax. It did not pick up the phone and make a phone call. It simply ran with the No, they did respond. Right after your statement that this is all contingent on this, they responded and said, we're not going to grant you a release from the insurance lawsuit. They made it clear that the offer to settle, in their view, didn't relate to that, but you never backed off. Well, judge, they never asked me to back off. That's the thing. The statement by Thermionics, and I believe it was stated sometime in July, July 13th, the statement by Thermionics said that their position, Thermionics' position was that I repudiated the argument. Thermionics did not say that I repudiated the argument. It only said that its position was that I repudiated the argument. What's more, as I said, Thermionics did not bother finding out if I would perform the agreement under the circumstances, and had they asked me, I would have. But given what you did say, given that you said it was contingent, given that you said the settlement was meaningless, and their refusal to give you what you wanted, how can we say that it was an abuse of discretion for the district court to conclude that you made it a material term? Because, judge, the district court did not reach the repudiation issue. The district court simply ruled that the dispute over the immaterial relief clause was a rejection and the counteroffer of the original offer, which was accepted on June 24th. There was no rejection. There was no counteroffer. The offer and acceptance were two definable events. The offer was made on June 24th, and the acceptance was made on – the offer, I'm sorry, was made on June 23rd, and the acceptance was made on June 24th. So they did not last two or three weeks, and that's when the release clause became an issue, really, two weeks after the acceptance. It became an issue because you made it an issue. Well, I made it an issue, judge, but it was not a material issue, because release clauses are not material as a matter of law. The district court did not – But this wasn't a mutual release as it related to the actual lawsuit you were involved in. This was a release of something entirely separate and apart. Yes, judge. I mean, you were reaching out to get something more, right? But that is immaterial in this case, judge, because the release clause of this insurance lawsuit was never made a material clause by either party, Thermionics or myself, and the release clauses are not material as a matter of law. That's not – Well, it's certainly material to Thermionics. They weren't going to give up their battle with their insurance company. But if Thermionics made it a material clause, judge, Thermionics is claiming that I walked away from the agreement. If Thermionics is claiming that the release clause is material, then it was Thermionics' walking away from the agreement that really took place. What? I don't understand what you're saying here. They walked away from the – if it's material, then they walked away? Well, I'm not the one – Thermionics was for $50,000 with no release clauses. I'm not the one who walked away from the agreement, judge. Thermionics didn't. The difficulty I'm having is that you can certainly free to argue here, and you're doing so quite effectively, but you can't testify here. I understand. And so I'm trying to listen to what you're saying and distinguish. And you said – you're saying it's not material, as I started with. I mean, we are left with the record of what people said at the time. And to say that the settlement is contingent on the full release, I don't see how one can walk away from that by explaining it here after the fact. Well, judge, judge Frost, this court construes patent claims every day. To say contingent is not the same as to say, I will walk away if you don't put the release clause in there. It just does not have the same meaning. The same way, as if we said, the release clauses are inherently material, that's not the same as to say that they're material as a matter of law. So were we saying the district court abused its discretion in construing it that way? Yes, judge. So it's not just claim construction, which we reviewed de novo. You're talking about an abuse of discretion standard, right? I am not talking about the abuse of discretion standard, judge. One other finding, though, that the district court made that I think that we're overlooking here is that the district court made a finding that the settlement contemplated a formal settlement agreement. That would have been an assumption at this point, judge, but even if the settlement agreement was contemplated, it would have had to be explicitly made a condition of the settlement to really derail the settlement. The Seventh Circuit has interpreted Illinois contract law to mean exactly that, and if the parties made it a conditioned precedent that the written agreement must be reduced and executed before the settlement is final, then certainly we wouldn't have had the settlement. But that was never a conditioned precedent, and in fact, the court can see from the joint appendix, page 840, that thermionics does not call the settlement a proposed settlement. It does not call it a tentative settlement. It calls it a settlement. The settlement was reached by both parties, and it was treated as such until this dispute over a minor release clause, which thermionics used to walk away from the argument. That's from Day-Green. Let's hear from the other side and see if there are any other points to be raised. Thank you, Your Honor. If I may, I'd like to also introduce Ms. Gentry, who's with us and participated on the brief, as well as Mr. Greg Harwood, who's in the courtroom today. Mr. Harwood is the president of Thermionics. He's come from Illinois. Judge O'Malley, first, as to your question about the court's finding that there had to be an agreement in writing, we would submit that, once again, it was Mr. Mikiansky who provided the term that required a formal written settlement agreement. In what he terms as his acceptance email, he also includes language that says, to our side of the case, please prepare a draft. The quote-unquote main terms should be, and he proceeds to list six terms. So a formal written settlement agreement was contemplated at the outset between these parties, and it was contemplated in part because that's exactly what Mr. Mikiansky wanted. He told our folks, please prepare a draft settlement agreement. So the district court finding is not only reasonable, it's correct, and it's correct in view of what Mr. Mikiansky said he wanted in the settlement of this agreement. So, I mean, the district court's analysis and your analysis really seem to differ to some extent. I mean, the district court really said there was no final settlement until you had a written document, and after that, then the parties couldn't reach a meeting of the mind. But you argue repudiation, which is a really different animal from what the district court relied on, isn't it? We did not rely on repudiation, Your Honor. It was an argument that was made below. We're not the lawyers that were there. Mr. Hopson was a lawyer of a different firm that made the argument to Judge Mills that there had been a repudiation. That argument was made, and Judge Mills rejected it. Judge Mills looked at it and said, no, as you say, I find that there's no settlement agreement. Of course, Mr. Mikiansky argues that by making that argument, we in effect conceded that there was a settlement agreement in order for it to be repudiated. We do not agree with that. The position, as Mr. Mikiansky calls it, that was asserted by Mr. Hopson certainly was not binding on Judge Mills. Judge Mills was free to look at the facts, and it was reasonable to come to the determination, as you say, that there was never a settlement agreement. For this court, that is our first and foremost position, that it was reasonable, it was not an abuse of discretion for Judge Mills to find that there was no settlement agreement. And we rely on some other facts that have not yet at least been discussed this morning that I'd like to take just a brief second to point out. In addition to the language, the settlement is contingent on full mutual releases, which is at A72, we would also point out that in Mr. Mikiansky's email, when he uses the terms, I'm sorry, the June 24th email, which is at A38, when he says that the main terms should be, and he goes on to list them, that's nothing more than a proposal. He's saying, I think the main or material terms should be as follows. And he puts those six points down. That's sent to our side of the case. Mr. Hopson looks at those and constructs a settlement agreement and release and sends that back over. He does not agree as to those six terms. So what happened from the outset here is the parties began to negotiate by drafts. The parties used the writing as a way to frame their negotiations. In addition, further confirming Mr. Mikiansky's requirement for a final formal settlement agreement that included full mutual releases, document A42, he says, without reciprocal releases, settlement would be, quote, the void of finality. In other words, there would be no settlement without full mutual releases. In support of the reasonableness of the decision below, we take the position that, as you said, Judge O'Malley, there never was a meeting of the minds here because there never were full mutual releases, and we certainly never offered a release of the insurance company case. As a result, there was never any settlement agreement, and that's why what Judge Mills did was reasonable and, in our view, correct. Another point that was made this morning is that the release term was not material. We certainly agree with the point that it was very material to Thermionics. Thermionics was never interested, as shown in, I believe, the document that was being referred to as A73, where... When we evaluate whether it was material or not, do we look at which side it's material to? Does it matter that it was material to you, but not necessarily to your friend? I don't think you have to look at either side to do that, Your Honor. I think that you can look at the Abbott case, which says in Illinois that material release terms are inherently material, and that was the case here. So if it's material to either party, it's material. I would argue, yes, Your Honor, if it's material to either party, it's material, but in this case, it was a material term to both parties. I mean, your friend argues that what you should have done is say, look, you don't really mean this, you don't really want this, so why don't we just go forward without it? And you never asked him whether he would go forward without it. Is that a fair argument? I think not. I think the record speaks otherwise. The record is very clear that in the first... in the first settlement agreement, Thermionics did so. In that first settlement agreement, we proposed only that he release Thermionics from the patent false marking claim. There was no mention of the insurance company lawsuit. That was, as you described, a separate matter to us, and our client was never interested in releasing or releasing them from the insurance company lawsuit. So what he's asking is that we go above and beyond, that we start essentially anticipating that he's going to make this argument and dill the lilies, so to speak, and explain to him ahead of time that it's an important, essential material term to us. No, it was always that way. It was that way from the outset. What's the status of that insurance suit? Is it proceeding? Is it proceeding to trial? Has it been withdrawn? I believe that it is still proceeding, Your Honor, but I do not know the exact answer to that question. I'm not counsel of record in that case, and I do not know. But I have no knowledge that it has been dismissed. I believe it is still in books. Mr. Mikiansky may know better than I on that question. Okay. Curious. Another argument that was made this morning is on repudiation, and Mr. Mikiansky purports that he revoked his repudiation in a timely manner, if there ever was. We would like to make two points. First, we don't believe there was ever a settlement agreement to be repudiated, but if there was, he's never repudiated. To this day, the term full mutual releases is still a point of contention between these parties. That's still an outstanding issue. That position has never changed. So therefore, there's never been any repudiation where he said, okay, I'll go back to before, where it was, you know, at some point in time, whether it was June 24 or some other period of time, there's never been any sort of looking back where he'd say, okay, we'll go back to that point. That position has always been on the table, and it stays on the table today. Therefore, there's never been any repudiation whatsoever. Your position also is that this case should proceed to trial, discovery into trial? No, ma'am. Our position in this case is that the judge probably found that there was no settlement in the case and dismissed the case under 12b-6. Have you tendered the $50,000? No, ma'am. We don't think there was a settlement agreement that would have required us to tender it. The dismissal turned on the AIA, is that right? Essentially, yes. And there has been no appeal from that, no argument that it couldn't be retroactively applied to this case? Right? I mean, the only appeal we have... There's certainly been no appeal from it. I don't recall an argument to that fact. Okay. So the only appeal we have is from the conclusion that there was no settlement? Yes, ma'am. Correct. Subject to any further questions from the court, by way of conclusion, we do maintain that what was done below was reasonable and correct. More questions? Okay. Thank you, Mr. Shetzer. Do we have some time, Mr. Bukatyansky? For the rebuttal, I would just like to address your question, Judge Newman. I don't know much of what happened with the insurance case. I just know that I was named as a nominal party, and I was released by the insurance company after having signed a release, and saying that I'm not going to appeal the judgment. Now, with respect to the... You were only named as a nominal party. Yes, Judge. Do I understand your argument to be that when you said it was contingent on full mutual releases and you said that the settlement was completely meaningless, that they were supposed to assume you were bluffing? Well, Judge, anticipatory breach is a very severe remedy. It is not taken lightly. If Thermionix is trying to make a claim that I repudiated the settlement, it has to show unequivocal, unambiguous intent not to perform the settlement agreement. And there's just no such thing on the record here. With respect to the point made by my colleague here, first of all, there was a meeting of the minds. As soon as the acceptance email was sent on June 24, 2011, that was the meeting of the minds. That was the magic moment of settlement contract formation. Second of all, the acceptance email contained several suggestions to Thermionix's prior counsel as a courtesy to get the written agreement done faster. The acceptance email said should be. It did not say must be. It did not say have to be. It did not unequivocally say that, okay, here's the terms that you have to include in the written agreement. Otherwise, we don't have a settlement. No, those were mere suggestions to get the work started. And therefore, there was no repudiation or rejection or counteroffer at that time. In fact, Thermionix's own offer letter, which is 837 of the joint appendix, said that Thermionix would litigate this issue to conclusion if the offer was not accepted by noon on June 27, which was a Monday. And Thermionix did not litigate that matter to conclusion. Thermionix's counsel sent me a draft written agreement. They proceeded to inquire about the approval of the Department of Justice, which is 840 in the joint appendix. And both parties proceeded with the settlement agreement as if it were a settlement agreement, which it was. Therefore, the entire argument of negotiating by draft does not have any merit. With respect to the statement made by Mr. Schetzel here, the law does not say that the release clause is material if it's material by either party. Now, the release clause must be made material either in the offer or in the acceptance, but it has to be made material by the parties before the offer and the acceptance, which form the contract. There's no dispute that there was an offer. There's no dispute that there was an acceptance and there was consideration. So a valid contract was formed here. Also, Thermionix confuses the issues here. Thermionix latched onto the release of the insurance lawsuit, but Thermionix did not want to offer a release in the false flag marking action either. The draft that Thermionix included in the correspondence between the parties did not include full mutual releases for both parties. It only included a unilateral release for Thermionix. Therefore, the issues are confused here because Thermionix didn't want any releases in the written agreement, not just the release from the insurance lawsuit. And so would you have gone forward with the settlement in the absence of any releases? At this point, I don't know, Judge, but I guess we'll never know because we didn't get to that point. Okay. That's all I have. If the court has any questions, I'll be happy to answer them. Thank you, both cases taken under submission. I thank the court.